IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ALLYSON KAYE SCOTT, ) | CIVIL ACTION NO. 9:14-1139-BHH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Supplemental Security Income (SSI)[1] on August 11, 2011 (protective filing date), alleging disability beginning August 11, 2011 due to bipolar disorder, attention deficit hyperactivity disorder (ADHD), and back problems. (R.pp. 15, 69, 259). Subsequently, on September 9, 2011, Plaintiff applied for Child's Insurance Benefits (CIB). (R.pp.

---

[1]A claimant can obtain SSI benefits if they can establish that they are disabled and have limited means. Sienkiewicz v. Barnhart, No. 04–1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.1999) [Discussing the difference between DIB and SSI benefits].



15, 59, 195).[2]  Plaintiff's claims were denied both initially and upon reconsideration.  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on August 29, 2012. (R.pp. 32-55).  The ALJ thereafter denied Plaintiff's claims in a decision issued October 10, 2012. (R.pp. 15-25).  The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner.  (R.pp. 1-4).

Plaintiff then filed this action in United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits or, in the alternative, for additional administrative proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence

---

[2]In order to be entitled to CIB, the claimant must have a disability that began before reaching age 22. See 20 C.F.R. § 404.350(a)(5). In this case, Plaintiff had not reached the age of 22 by her alleged onset date. The regulations provide that the five-step sequential evaluation process applies to persons who file an application for child's insurance benefits based on disability. 20 C.F.R. § 404.1520(a)(2); see also Hicks v. Colvin, No. 7:12–cv–618, 2014 WL 670916, at *2 n. 2 (W.D.Va. Feb. 20, 2014); Reichardt v. Astrue, No. 6:11–3254–DCN–KFM, 2013 WL 461453 at *1-2 n. 2, 4 (D.S.C. Jan. 18, 2013), adopted 2013 WL 451407 (D.S.C. Feb. 6, 2013); SSR 11-2p, 2011 WL 4055665, at *2–3 (Sept. 12, 2011) ("Evaluating Disability in Young Adults").

2



to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Case History

A review of the record shows that Plaintiff was only eighteen (18) years old on her alleged disability onset date. She has no past relevant work experience. (R.pp. 17, 23, 36). With respect to her education, the ALJ made a finding that Plaintiff has at least a high school education (R.p. 23), although Plaintiff testified that she only obtained a certificate of attendance after completing high school during which she took special education classes "most" of the time (R.pp. 36-37, 43). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.



After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[3] of an organic mental disorder and an affective disorder (R.p. 17), she nevertheless retained the residual functional capacity (RFC) for a full range of work at all exertional levels with the nonexertional limitations of simple, repetitive tasks with no direct customer service; occasional changes in work settings in a no fast-paced production environment; and a restriction from work requiring good reading or writing skills. (R.p. 20). The ALJ then obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy with these limitations, and was therefore not disabled during the time period at issue. (R.pp. 23-24).

Plaintiff asserts that in reaching this decision, the ALJ erred at step 3 of the sequential evaluation procedure by not finding that her impairment or combination of impairments is of a severity to meet or medically equal the criteria for Listing 12.05C;[4] that the Appeals Council erred by failing to consider the new and material evidence Plaintiff submitted in support of her applications; that the ALJ erred in finding that she has at least a high school education; and that the ALJ's decision is not supported by substantial evidence at step 5 because the hypothetical to the VE failed to include all of her impairments. After careful review and consideration of the evidence and arguments presented, the undersigned is constrained to agree with Plaintiff that the Appeals Council failed to

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[4]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.



properly consider whether she met or equaled Listing 12.05C in light of the new evidence submitted to that body, thereby requiring a reversal with remand in this case.

## Discussion

Listing 12.05 deals with mental retardation (intellectual disability),[5] defined as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The Listing further provides that the required level of severity for this disorder is met when the requirements of any of the four sets of criteria (paragraphs A-D of the Listing) are satisfied, as long as the impairment also satisfies the diagnostic description (i.e., significantly sub-average general intellectual functioning with deficits in adaptive functioning). 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00(A). The applicable paragraph for consideration of Plaintiff's claim is paragraph C of § 12.05:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of functioning....

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

The record reflects that on August 21, 2012, Dr. Gene J. Sausser, Ph.D. conducted a psychological evaluation and administered testing. The Wechsler Adult Intelligence Scale-4 test indicated that Plaintiff had a Full Scale IQ score of 64, indicating a mild range of mental retardation. (R.p. 506). Wide Range Achievement Test-3 results indicated grade scores of 4 in reading, 2 in

---

[5]The Social Security Administration replaced the term "mental retardation" with "intellectual disability" in the listings through a final rule effective on September 3, 2013. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 FR 46499 (Aug. 1, 2013) (codified at 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 12.05). Because the ALJ's decision was rendered prior to the change in terminology, the decision contains the term "mental retardation."



spelling, and 3 in arithmetic. (R.p. 507). As to testing, Dr. Sausser noted that Plaintiff worked at an average pace and stated she preferred items with pictures. (R.p. 506).

The ALJ considered Dr. Sausser's August 2012 psychological evaluation, but found that Plaintiff did not have a "severe" impairment of mental retardation because Plaintiff's school records contained results from Wechsler Abbreviated Scales of Intelligence (WASI) testing from October 2000[6] (when Plaintiff was seven years old and had been retained in the first grade) indicating that Plaintiff had a full-scale IQ score of 84, which was described as falling within the low average range of intellectual functioning (R.p. 315), and there was no medical evidence "as to the claimant having any medical condition which would account for such [a] decline in her intellectual functioning." (R.p. 18). The ALJ therefore concluded that Dr. Sausser's 2012 test results were invalid. Id. The ALJ also considered Plaintiff's argument that she met Listing 12.05, but rejected it because he found that Plaintiff's August 2012 IQ score was not valid (as discussed above). (R.pp. 19-20). As part of this finding, ALJ wrote:

> The claimant's representative also noted that she did not graduate from high school; however, she also did not attend very much and all the information available indicates that she gave very poor effort while there ...and there is no reason to believe that she gave any greater effort upon her latest I.Q. testing. Moreover, the claimant was able to answer questions posed during the hearing in a competent manner.

(R.p. 19-20).

Thus, the ALJ found that Plaintiff did not meet Listing 12.05 because she failed to show her IQ fell within the required range.

---

[6]Results of the Wechsler Individual Achievement Test ranged from the second to the seventh percentile. (R.p. 316).



An ALJ may discredit IQ scores based on "other evidence contradicting them," and "has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock v. Astrue, 667 F.3d 470, 474-475 (4th Cir. 2012). Therefore, the ALJ's failure to credit Dr. Sausser's finding of August 2012 is not per se error as long as there is substantial evidence in the record to support the ALJ's findings. However, after the ALJ's decision, Dr. Sausser wrote a letter (dated November 6, 2012) in response to Plaintiff's request for Dr. Sausser "to provide comment on the intellectual evaluation of [Plaintiff] on 8/21/12." Dr. Sausser stated that he had reviewed the testing file for any conditions which might have contributed to the results being invalid, that there were no factors in the test environment that might contribute to producing an invalid result (the room was quiet, comfortable and free of distractions), Plaintiff did not complain of any physical issues that might have contributed to her performance, and that Plaintiff had produced good effort and there was no suggestion of malingering. (R.p. 509). Dr. Sausser further opined that intelligence seldom produces the same scores over time, but that Plaintiff's IQ score of 64 would have a 95 percent chance of falling between 61 and 69 on repeated administrations. As for the WASI test (on which Plaintiff had the IQ score of 84), he stated that this

> is a test that I have never used in over 40 years of measuring intelligence. It is a four item pencil and paper instrument usually administered in a 30 minute time span in groups. It is used as a general screening instrument to determine the need for more in depth evaluation. It is not meant to replace more comprehensive measures of intelligence such as the Wechsler Adult Intelligence Scale-IV.

(R.p. 509). Dr. Sausser summarized his statement by opining that he was "unable to determine any factors that might have contributed to [Plaintiff's] IQ result being an invalid score." (R.p. 510).



While the ALJ was not able to consider Dr. Sausser's November 2012 letter since it was submitted after his decision, the Appeals Council admitted this letter into evidence; (R.pp. 2, 4); and pursuant to 20 C.F.R. §404.970:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence . . . where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.[7] It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). In order to be "new" evidence, the evidence must not be "duplicative or cumulative," and in order to be "material," there must be a "reasonable possibility that it would have changed the outcome." Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

This evidence was "new," since it was evidence that had not been considered by the ALJ and provided opinion evidence that was not duplicative and was in fact contrary to the decision. It could also be considered "material," as a valid IQ score may support a finding (if the other requirements of the Listing are met) that Plaintiff met or equaled Listing 12.05. However, in denying Plaintiff's appeal, the Appeals Council stated simply that "this information does not provide a basis for changing the Administrative Law Judge's decision." (R.p. 2). No discussion or analysis of this evidence was provided, and the undersigned concludes that the Appeals Council committed clear error in its handling of this evidence under the facts of this case.

---

[7]The parties do not appear to dispute that the additional evidence relates to the period on or before the ALJ's decision.



8

The Fourth Circuit held in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011), that Appeals Councils are not required to articulate a rationale for denying a request for review, and are required to make findings of fact and explain its reasoning only where it grants a request for review and issues its own decision on the merits. Meyer, 662 F.3d at 706. Nevertheless, the Meyer court also noted that it was "certainly mindful that 'an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review;'" Id. (citing Martinez v. Barnhart, 444 F.3d 1201, 1207-1208 (10th Cir. 2006)); and went on to hold that, where the treating physician in that case had submitted a letter to the Appeals Council detailing Plaintiff's injuries and recommending significant restrictions on Plaintiff's activity, it "simply [could not] determine whether substantial evidence support[ed] the ALJ's denial of benefits . . .," because the ALJ, in rendering his decision, had specifically emphasized that the record *before him* did not include any restrictions from the treating physician. Id. at 707. Therefore, the Meyer court reversed the judgment of the district court and remanded for rehearing by the Social Security Administration.

The rational for reversing the decision in Meyer applies here. Dr. Sausser's November 2012 opinion provides contradictory evidence to the ALJ's conclusion that Plaintiff's August 2012 IQ scores were not valid, and although the present case does not involve a treating physician's opinion, substantial evidence review by a district court is not possible in the absence of findings by the fact finder on the newly submitted evidence where the evidence is not "one sided" and the newly submitted evidence conflicts with other evidence credited by the ALJ and his factual findings. See Id. at 706–07.

The Commissioner argues, however, that even if Plaintiff's IQ does fall between 60 and 70, she also failed to prove that she had the required deficits in adaptive functioning to qualify



as disabled under the Listing.[8]  See Sullivan, 493 U.S. at 530 ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."].  However, although Plaintiff has the burden of proving an adaptive deficiency during the developmental years; see Hancock v. Astrue, 667 F.3d 470, 476 (4th Cir. 2012); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)[claimant has the burden of production and proof at Steps 1 to 4 of the sequential evaluation process]; because the ALJ found that Plaintiff did not meet Listing 12.05 based on not having a valid IQ score in the required range, he does not appear to have addressed the separate issue of whether Plaintiff had deficits in adaptive functioning related to significant sub-average general intellectual functioning reflective of an intellectual disability.  Such a finding by the fact finder is

---

[8]Deficits in adaptive functioning "include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012)(citing Atkins v. Virginia, 536 U.S. 304, 308 n. 3 (2002)). The Social Security Administration (SSA) has expressly declined to mandate standards for determining deficits in adaptive functioning, recognizing that "the method of measuring the required deficits in adaptive functioning differ" among the four major organizations in the United States dealing with intellectual disabilities, and noting that the "SSA's definition establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (April 24, 2002). Adaptive functioning is defined in the Diagnostic and Statistical Manual of Mental Disorders (D.S.M.)(published by the American Psychiatric Association) as follows:

> Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socio cultural background, and community setting.

DSM-IV, p. 39. Areas to be considered when discussing adaptive functioning may include such areas as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. Id.; see Wiley v. Epps, 625 F.3d 199, 216 (5th Cir. 2010).



necessary, as there is conflicting evidence (discussed hereinbelow) in the record and this Court cannot make such a <u>de</u> <u>novo</u> finding on appellate review. <u>Nester v. Astrue</u>, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."].

The Commissioner argues that the medical and non-medical evidence does not support such a finding based on Plaintiff's twelfth grade teacher notation that while Plaintiff's MAP scores indicated a second or third grade level of performance, Plaintiff performed at higher levels in the classroom; a notation indicated that Plaintiff did well organizationally in class, used her time well, worked hard, and compensated well; her medical records did not suggest such deficits in adaptive functioning; that although Plaintiff exhibited some behavior problems, she generally got along with teachers and could follow school rules when she wanted; Plaintiff was capable of a wide range of activities of daily living including that she socialized with friends, played basketball to "burn off energy," cared for her pets, did household jobs, used Facebook and conducted job searches on the internet, and cared for her greater personal needs; she signed herself up (when her mother did not take her for recommended treatment) for an outpatient treatment program because she believed her marijuana use had become a problem; and she stated she read that her medications could cause an increase in appetite and wanted to stop them because she was concerned over her weight gain. ECF No. 17 at 22-23.

However, contrary to these arguments, Plaintiff has presented evidence which may support a finding that she had deficits in adaptive functioning. Plaintiff was in special education during most of her schooling and only received a certificate of attendance. (R.p. 37). An eighth

11



grade IEP[9] indicated that Plaintiff's reading scores ranged from the second to fifth grade level and her math scores were at the second grade level (R.p. 288), her twelfth grade IEP reflects that Plaintiff's MAPS scores indicated reading and math skills at only the second grade level and language arts at the third grade level (R.p. 430), and she had a cumulative 1.78 grade point average in February 2011 (R.p. 210).  Further, Plaintiff's testimony and her medical notes indicate that she had problems with telling time (she could not tell time on a "circle" watch)  and counting money (she could distinguish coins and bills, but did not know how to add coins and although she could count one and five dollar bills, she could not count twenty dollar bills).  (R.pp. 44-45).  At age nineteen, Plaintiff had not obtained a learner's permit to drive and testified that she had twice failed the test to do so. (R.p. 44).  Additionally, Dr. Sausser opined that if Plaintiff was awarded benefits she was not capable of managing those funds appropriately; (R.p. 608); while in a function report Plaintiff's mother wrote that Plaintiff did not read well enough to understand cooking directions; only fed her pets every third day and emptied the litter box every other week, did not perform personal care "until threatened;" thought it was acceptable to wear the same clothes for three to four days; had to be told to bathe and shower; needed to have her medications put out for her; and had to be told exactly what to do and how to do each step when taking out trash and cleaning. (R.pp. 226-227).

Thus, in light of the additional opinion evidence from Dr. Sausser, and as the ALJ did not address the issue of adaptive functioning and there is conflicting evidence of record, this action should be remanded to the Commissioner for further consideration of whether Plaintiff met or equaled Listing 12.05.  While it is certainly possible that the ALJ on remand may still find that Plaintiff does not meet or equal Listing 12.05, that is a finding that must be made by the ALJ after

---

[9]Individualized Education Plan.



consideration of the new evidence and, if required, the additional question of adaptive functioning, not by this Court in the first instance. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)["Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."]; Nester, No. 2009 WL 349701 at * 2 [Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."].

Finally, although the undersigned finds that this matter should be reversed and remanded for the reasons set forth hereinabove, it is also worth noting that the ALJ appears to have discounted Plaintiff's IQ score as invalid in part because he found that Plaintiff did not graduate from high school because she did not attend much and gave very poor effort. See generally, (R.pp. 21-23). He further made a finding that Plaintiff had "at least a high school education." (R.p. 23). However, the evidence of record indicates that Plaintiff was enrolled in special education classes through most of her schooling and she did not obtain a diploma, instead receiving a District Non-Diploma. It was also noted in Plaintiff's December 2010 IEP that she continued to be eligible for special education services and remained eligible for services until she was twenty-one years old. (R.p. 446). Therefore, it is unclear whether a possible misunderstanding as to Plaintiff's education level affected the Listing 12.05 analysis. Additionally, although the ALJ found that Plaintiff's RFC included a restriction "from work requiring good reading" skills (R.p. 20), the ALJ did not include this restriction in his hypothetical to the vocational expert. (see R.p. 46). See also Walker v. Bowen, 889 F.2d 47, 49 (4th



Cir. 1989)[In order for a vocational expert's opinion to be helpful and relevant, it must be "in response to proper hypothetical questions which thoroughly set out all of claimant's impairments"]; Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) [hypothetical question submitted to the VE must state the claimant's impairments with precision].

Therefore, these issues should be reconsidered and addressed by the ALJ on remand, during which the ALJ will also be able to reconsider and re-evaluate the remainder of Plaintiff's claims of error in toto as part of the reconsideration of this claim.  Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

### Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for revaluation and consideration of whether Plaintiff met or equaled Listing 12.05C, and for such further administrative action as may be necessary and appropriate.  See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 1, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

15

